# FILED

NOV 19 2020

Clerk, U.S. District Court
Texas Eastern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| V. | § | Case No. 4:20-CR-_355_ -_ALM/CAN_ |
| | § | Judge _____ |
| BRADLEY PAUL NIX (01) | § | |
| JAMES CLARK NIX (02) | § | |

**4:20mj2403**

United States Courts
Southern District of Texas
FILED

*November 30, 2020*

David J. Bradley, Clerk of Court

THE UNITED STATES GRAND JURY CHARGES:

### General Allegations

At all times material to the facts set forth in this Indictment:

1.   Bradley Paul Nix ("**Bradley Nix**") was an individual residing within the Eastern District of Texas.

2.   James Clark Nix ("**James Nix**") was an individual residing in Eagle, Idaho, Potomac, Maryland, and Katy, Texas.

3.   L.N. was the wife of James Nix.

4.   NECO International, Inc. ("NECO") was a business organization conducting business in the City of Lewisville, in the Eastern District of Texas.  During the period of the events described in this indictment, **Bradley Nix** served as the Vice-President or a director, **James Nix's** wife, L.N., served as an officer or director, and **James Nix** signed corporate documents filed with the State of Texas for this company.

5.   AMIG, LLC, ("AMIG") was a business organization conducting business located in the City of Lewisville, in the Eastern District of Texas.  During the period of the events described in this indictment, **James Nix** and **Bradley Nix** served as Managers of AMIG.

6.      Chase Bank, N.A., was a financial institution.

7.      Provident Trust Group, LLC ("PTG") was a self-directed retirement fund administrator with a principal place of business in the State of Nevada.

## COUNT 1

Violation: 18 U.S.C. § 1349 (Conspiracy
to Commit Wire Fraud)

1.      The General Allegations section of this indictment is realleged and incorporated by reference as though fully set forth herein.

2.      From in or about 2014, and continuing up to the date of this indictment, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, the defendants, **James Nix** and **Bradley Nix**, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud, that is to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a knowing scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, with specific intent to defraud with knowledge of the unlawful purpose of the agreement, and joined the agreement with the intent to further the unlawful purpose.

## Purpose of the Conspiracy

3.      It was the general purpose of the conspiracy for the defendants to unlawfully and unjustly enrich themselves by obtain money from the victims by means of materially false and fraudulent pretenses, representations, and promises.

2

### Manner and Means of the Conspiracy

The manner and means by which the defendants sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.     **James Nix** and **Bradley Nix** both worked as accountants/bookkeepers who managed taxes for both individuals and small businesses under the auspices of NECO, a small tax accounting firm. **James Nix** and **Bradley Nix** took advantage of these relationships to market investments in AMIG and NECO.

5.     On or about April 7, 2014, **James Nix** and **Bradley Nix** opened a bank account at Chase Bank, N.A., in the name of AMIG, LLC, bearing account number XXXXXX6686. On or about April 7, 2014, **James Nix** and **Bradley Nix** opened a second bank account at Chase Bank, N.A., in the name of NECO, bearing the account number XXXXXX9793. The defendants controlled, used, and maintained these Chase Bank accounts to further their unlawful scheme, to receive and deposit investment funds from investors, and to gain access to the funds for personal uses.

6.     During the course of their scheme **James Nix** and **Bradley Nix** solicited investments from individuals living in and around the area of North Texas, representing that funds these individuals invested with the Nixes would be at little to no risk and would earn a guaranteed rate of return of approximately ten percent per year. The Nixes further represented to potential investors that their funds would be used by the Nixes to invest in local businesses that needed an infusion of capital, and that return for this capital infusion

3

AMIG/NECO would earn a rate of return that would provide the money needed to satisfy the investors' expected 10% annual rate of return. For investors who had existing retirement account funds to invest, **James and Bradley** frequently required the individuals to open an account with a trust company, such as Provident Trust Group, LLC ("PTG"). The investors would open an account with the trust company and would transfer the investment funds to the trust company, all at the direction of **James Nix** and **Bradley Nix**, or one of them. Afterwards, the victim would execute a direction of investment document and provide it to the trust company; this document authorized and directed the trust company to send the funds to AMIG. **James Nix** and **Bradley Nix**, or one of them, would provide a promissory note to the trust company, stating that AMIG, LLC was the borrower, and the trust company was the lender, and promising to pay the amount of the invested funds plus ten percent after a period of seven years passed. After receiving the investor's direction of investment, the trust company would then initiate an interstate wire transfer of funds from its account, to AMIG, LLC's Chase Bank account number XXXXXX6686, located in Texas.

7.      After **James and Bradley** received investments from the victims, they often comingled the funds in either the AMIG and/or NECO operating Chase Bank accounts for these companies. **James Nix** and **Bradley Nix** used the majority of the investor funds for personal expenses and to pay prior AMIG/NECO investors. On occasion, **James Nix** and **Bradley Nix** distributed a small percentage of the funds to the area businesses they had described to the investors.

## Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to achieve its objects and purpose, the following acts, among others, were committed in the Eastern District of Texas and elsewhere:

### K.C.'s Investment with **Bradley Nix** and **James Nix**

8.     K.C., an individual known to the grand jury, hired **James Nix** and **Bradley Nix** to prepare his and his wife's taxes from approximately 1990 through 2001.

9.     K.C. and his wife had invested approximately $135,000 with **James Nix** prior to 2014 and **James Nix** provided what were purportedly NECO corporate bonds signed by L.N. to K.C. in return. K.C. did not redeem these corporate bonds but left his investment with James Nix and NECO. In or about the year 2014,  **James Nix** again discussed an investment with K.C. and his wife, representing to them that this investment would draw the same 10% return annually as his prior NECO bond investment and would be invested in drug stores, a few bars in Denton, Texas, a toy company, land with "federal subsidies," and oil wells in Washington State. On or about May 30, 2014, K.C. and his wife invested $100,000 with AMIG by writing a personal check to AMIG, LLC, which **James Nix** or **Bradley Nix** deposited into AMIG, LLC's Chase Bank, N.A., account number XXXXXX6886. The $100,000 was funds that K.C. and his wife secured from the sale of their home. K.C. later invested an additional $5,000 with **James Nix** and **Bradley Nix** for the benefit of his daughter. Over time, K.C. and his wife withdrew approximately $20,000 for their use.

5

10.     In or around June 2019, K.C. advised **Bradley Nix** that he was going to be
retiring and was giving the required six months' notice to start drawing on K.C.'s account.
**Bradley Nix** represented to K.C. that his father (i.e., **James Nix**) took care of the AMIG
side of the business, and that checks would go out on the 15th of the month. K.C. did not
receive a check from **James** or **Bradley** by January 27, 2020, and again contacted Bradley
Nix, but no check came in the mail.

11.     Around the end of January of 2020, K.C. called **James Nix**, who told K.C.
that **Bradley Nix** did not speak to him about the check and stated that **Bradley Nix** wasn't
running the business correctly. K.C. informed **James** that his wife, L.N., signed the NECO
corporate bonds, and in response to this **James Nix** asked K.C. what it would take to get
her (L.N.) out of this.

12.     On or about January 30, 2020, **Bradley Nix** hand-delivered an envelope to
K.C.'s mailbox with a check payable to K.C. drawn on AMIG Chase Bank, N.A. account
number XXXXXX6686 in the amount of $2,085.15. K.C. deposited the check but his bank
informed him that the check was returned as non-sufficient funds ("NSF") were in the
AMIG, LLC Chase Bank account number XXXXXX6686 to cover the check.

13.     Prior to K.C.'s retirement, he had planned to take a cruise vacation. In or
about early February of 2020, K.C. again called **James Nix** regarding the problems with
getting his monthly disbursement check. During this call **James Nix** told K.C. that he
(**James Nix**) did not have any money, and that while K.C. was on his cruise he should just

jump over the rail and end it because K.C. was not getting any money. K.C. continued to attempt to contact **James Nix** after this but did not receive any further response.

14.     In contrast to **James Nix's** representations, **James Nix** and **Bradley Nix** transferred some of the funds to the NECO Chase Bank account number XXXXXX9793, made payments on **James Nix's** personal credit cards, and paid property taxes, and withdrew funds as cash. Only a small portion of the funds went to the small business investments as **James Nix** had represented.

15.     All told, K.C. invested approximately $240,000 with **James Nix** and **Bradley Nix**. At the end of the scheme, K.C. suffered a net loss of approximately $220,000.

### R.K.'s Investment with **James Nix** and **Bradley Nix**

16.     R.K., an individual known to the grand jury, and hired **James Nix** to prepare his tax returns beginning in or around 2007. In or about 2015 or 2016 **James Nix** suggested that R.K. invest money with his company, AMIG. **James Nix** represented that AMIG utilized investor money to invest in small businesses which needed capital infusion, and in return for this capital infusion these small businesses repaid AMIG a return that was passed on to AMIG investors. **James Nix** did not provide the names or other information of the businesses in which AMIG was investing but assured R.K. that these businesses were clients of his tax preparation business. **James Nix** represented that R.K. was guaranteed a 10% rate of return and told R.K. he could get his full investment back at any time with three-six months' notice. **James** instructed RK to open an account with PTG and

7

fund the account with funds that R.K. had in his retirement account that R.K. wished to invest with AMIG. **James** told R.K. this method was the only way that **James Nix** could have access to the funds to R.K.'s funds to invest as he represented.

17.     On or about December 15, 2015, pursuant to the directions provided by **James Nix**, R.K. opened and funded a PTG account in the amount of approximately $400,000.00 by initiating an electronic funds transfer from his retirement account held by an institution to PTG's account in California. Also pursuant to **James Nix's** directions, R.K. completed a direction of investment form, directing PTG to wire transfer $399,250 to AMIG, LLC's Chase Bank account number XXXXXX6686 (controlled by **James Nix** and **Bradley Nix**).

18.     **James Nix** executed and provided to PTG a "Promissory Note" in relation to R.K.'s investment funds and delivered it to PTG. This document represented that AMIG, LLC was the "Borrower" and that "Provident Trust Group NECO was the "Lender." The promissory note in a paragraph titled "Promise to Pay" stated "For value received, Borrower promises to pay Lender $399,250.00 and interest at the yearly rate of 10% on the unpaid balance as specified below." Elsewhere, in a section of the promissory note titled "Security", the document stated, "This note is secured by stock and assets of AMIG, LLC." The Promissory Note was signed by **James Nix** and faxed from within Texas to PTG's office in the State of Nevada.

19.     On or about January 2, 2016, **James Nix** and **Bradley Nix** caused an interstate transmission in the form of a telephone facsimile to be sent from telephone

facsimile number 972-436-4209, in the Eastern District of Texas, to PTG in Las Vegas, Nevada, at facsimile number 702-253-7565.  The faxed information included the promissory note signed by **James Nix**, the direction of investment signed by or for R.K., a copy of the certificate of formation for AMIG, LLC, and other documentation.



20.     On or about January 4, 2016, PTG,  initiated a wire transfer of R.K.'s investment funds in the amount of approximately $399,250 from PTG Citizens Business Bank account number XXXXXX2306 in California, to the AMIG Chase Bank, N.A., account number XXXXXX6886, by interstate wire transmission.

21.     In contrast to **James Nix's** representations, **James Nix** and **Bradley Nix** did not spend R.K.'s $399.250 for investments in small businesses, but instead comingled these funds with other money, and then made payments on James Nix's personal credit cards, paid other investors, withdrew the funds as cash, and paid themselves by check.

22.     In 2017, R.K. invested an additional $100,000 with AMIG, again by initiating an interstate electronic funds transfer from his financial institution in Texas to PTG's account in Citizens Business Bank account number XXXXXX2306 in California, and by completing a direction of investment to PTG.  **James Nix** again executed and provided to PTG a "Promissory Note" that stated that AMIG was the "Borrower" and Provident Trust Group, LLC was the "Lender,"  and again stated that "Borrower promises to pay Lender $100,000.00 and interest at the yearly rate of 10%, on the unpaid balance as specified below."  The note also stated that "This note is secured by stock and assets of AMIG, LLC."  The promissory note was signed by **James Nix** and dated August 25, 2017.

9

Case 4:20-mj-02403   Document 1   Filed on 11/30/20 in TXSD   Page 10 of 26
Case 4:20-cr-00355-ALM-CAN *SEALED*   Document 1   Filed 11/19/20   Page 10 of 25 PageID
#: 10

On or about August 28, 2017, PTG initiated a wire transfer of approximately $100,000 of

R.K.'s investment funds from PTG Citizens Business Bank account number

XXXXXX2306 located in the State of California to the AMIG Chase Bank, N.A., account

number XXXXXX6886, by interstate wire transmission.

23.     In contrast to **James Nix's** representations, **James Nix** and **Bradley Nix**

transferred approximately $80,000 of R.K.'s $100,000 in funds to the NECO Chase Bank

account number XXXXXX9793, where they used it for a payments for purchase of real

property.  Additionally, **James Nix** and **Bradley Nix** made payments on **James Nix's**

personal credit cards and payments to other investors with the remainder of R.K.'s

$100,000 investment.

24.     In addition to the above, from in or about the years 2015 – 2019 R.K.

invested another approximately $309,000 with **James Nix** and AMIG, LLC, by writing

checks payable to AMIG, LLC.  **James Nix** represented that these funds would be invested

in pharmacies doing business in Texas.  Most of these funds were not spent as **James Nix**

represented.

25.     All told, R.K. invested approximately $808,250.00 with **James Nix** and

**Bradley Nix** in AMIG.  At the end of the scheme, R.K. suffered a net loss of

approximately $807,855.00.

N.R.'s Investment with **Bradley Nix** and **James Nix**

26.     Individual N.R., known to the grand jury, was introduced to Bradley Nix by

an AMIG investor. N.R. met in person with **Bradley Nix** at the AMIG office located in

10

Lewisville, Texas, in the Eastern District of Texas. **Bradley Nix** told N.R. about AMIG and explained that instead of investing in a 401K, N.R. could invest in AMIG, which invested in smaller companies. **Bradley Nix** also represented that by investing in AMIG N.R. would be guaranteed a ten percent return on investment, but he never told N.R. what specific companies N.R.'s money would be invested in.

27.  In accordance with **Bradley Nix's** directions, and based on his representations about the investment, N.R. invested approximately $275,000, by a check written on his individual retirement account, which was deposited into PTG's Citizens Business Bank account number XXXXXX2306 in California. Someone other than N.R. completed the PTG account opening documentation and direction of investment form related to this investment, and then transmitted these forms to PTG. The direction of investment form, dated December 4, 2018, authorized PTG to disburse the $275,000 in N.R.'s retirement funds to AMIG, LLC's Chase Bank account controlled by **James Nix** and **Bradley Nix**. On or about December 10, 2018, **James Nix** provided a promissory note to PTG, signed by him and dated December 7, 2018, promising to pay PTG the sum of $275,000 and interest at the yearly rate of 10%.

28.  On or about December 11, 2018, PTG initiated a wire transfer of the $275,000 in funds from its Citizens Business Bank account number XXXXXX2306 in California to the AMIG, LLC Chase Bank account in Texas, which was controlled by **Bradley Nix** and **James Nix**. Within the following weeks **Bradley Nix** and **James Nix** spent the majority of these funds for personal uses, including: transfers to personal bank accounts held by **James Nix**; payments to personal credit cards accounts held by **James**

11

Nix; cash withdrawals; a payment for a time share held by **James Nix**; payments on an auto loan held by **Bradley Nix**; and payments to other AMIG, LLC, investors.

29.     In accordance with **Bradley Nix's** directions, and based on his representations about the investment, N.R. separately invested approximately $74,000, by a check written on his individual retirement account, which was deposited into PTG's Citizens Business Bank account number XXXXXX2306 in California. Someone other than N.R. completed a PTG direction of investment form related to this investment, and then transmitted this form to PTG. The direction of investment form authorized PTG to disburse the $74,000 in N.R.'s retirement funds to the AMIG, LLC's Chase Bank account number XXXXXX6886 controlled by **James Nix** and **Bradley Nix**. On or about March 8, 2019, **James Nix** provided a promissory note to PTG, signed by him and dated March 8, 2019, promising to pay PTG the sum of $74,000 and interest at the yearly rate of 10%. **James Nix** also provided another promissory note to PTG on or about March 11, 2019, promising to pay PTG the sum of $74,000 and interest at the yearly rate of 10%. On or about March 12, 2019, PTG initiated an interstate wire transfer of the $74,000 in funds from its Citizens Business Bank account number XXXXXX2306 in California to the AMIG, LLC Chase Bank account number XXXXXX6886 in Texas, which was controlled by **Bradley Nix** and **James Nix**.

30.     After N.R. had his funds wire transferred to PTG's account, he borrowed $70,000 against the investment. On occasion N.R. asked Bradley Nix for statements showing his account totals, but **Bradley Nix** never provided any. **Bradley Nix** assured N.R. that he would take care of any tax-related issues.

Case 4:20-mj-02403   Document 1   Filed on 11/30/20 in TXSD   Page 13 of 26
Case 4:20-cr-00355-ALM-CAN *SEALED*   Document 1   Filed 11/19/20   Page 13 of 25 PageID
#: 13

31.     On or about September 23, 2020, N.R. spoke with **Bradley Nix** on the phone.
In response to N.R.'s question about the balance on N.R.'s AMIG account, **Bradley Nix**
stated that the account had "nearly 400" and "like 398," representing that N.R. had
approximately $400,000 on account.  But in August 2020, the AMIG, LLC Chase Bank
account number XXXXXX6886 that received N.R.'s investment funds had a balance of
less than $100.00.

32.     **James Nix** and **Bradley Nix** did not invest the funds as **Bradley Nix** had
represented, but instead transferred funds to the NECO Chase Bank account number
XXXXXX9793, made payments to other investors, withdrew cash, and made payments on
**James Nix's** personal credit cards.

33.     All told, N.R. invested approximately $349,000 with **Bradley Nix** and **James
Nix**, and lost a total of approximately $279,000

R.W.'s Investment with Bradley Nix and James Nix

34.     R.W., an individual known to the grand jury, met **James Nix** in or around the
years 2014 – 2015. **James Nix** prepared R.W.'s individual income tax returns over a period
of time. R.W. operated a business, W.T.S., known to the grand jury, and **James Nix** also
acted as the certified public accountant for W.T.S. **James Nix** suggested in or around the
year 2015 that R.W. invest in a self-directed income retirement account and represented
that R.W. would earn 9.5% - 10% return on his invested money.  In accordance with
**Bradley Nix's** directions, and based on his representations about the investment, R.W.

13

opened an account with PTG and on or about on or about August 24, 2015, R.W. initiated a

wire transfer of approximately $272,020.00, by means of interstate wire transmission, from

W.T.S.'s retirement funds account in Texas to PTG's Citizens Business Bank account

number XXXXXX2306 in California . On or about September 1, 2015, R.W. also

provided a direction of investment form to PTG, authorizing PTG to disburse the $271,000

in W.T.S.'s funds to AMIG, LLC's Chase Bank account number XXXXXX6686

controlled by **James Nix** and **Bradley Nix**. At or around this same time, **James Nix**

provided a promissory note to PTG, signed by him and dated September 1, 2015,

promising to pay PTG the sum of $271,000 and interest at the yearly rate of "10%

MINIMUM." On or about September 2, 2015, PTG initiated a wire transfer of the

$271,000 in funds from its Citizens Business Bank account number XXXXXX2306 in

California to the AMIG, LLC Chase Bank account number XXXXXX6886 in Texas,

which was controlled by **Bradley Nix** and **James Nix**.

35.     In or around December of 2016, R.W. again invested retirement funds with

James Nix and Bradley Nix. Based on **Bradley Nix's** representations about the

investment, on or about December 14, 2016, R.W. initiated wire transmission payment of

approximately $350,000 from W.T.S.'s Chase Bank account in Texas to AMIG, LLC's

Chase Bank account number XXXXXX6886, by means of interstate wire transmission. In

contrast to **Bradley Nix's** representations about the investment, **Bradley Nix** and **James

Nix** comingled these funds and spent them for personal purposes such as the purchase of a

Land Rover and a Maserati automobiles, cash withdrawals, payments to themselves by

check, and payments to other investors.

36.    After receiving R.W.'s funds, **James Nix** provided a total of approximately $415,000 to R.W. by way of a loan against his invested funds.   R.W. later paid back $250,000 of these loaned investment funds.  After transferring the above funds to the AMIG Chase Bank account number XXXXXX6686, R.W. needed funds for a down payment for rental property and requested these funds from **James Nix**, who did not provide the funds to R.W. but instead provided excuses about why the funds were not available.

37.    On or about December 18, 2016, **James Nix** provided to R.W. a table describing monthly balances on R.W.'s account, noting loans/payments on the account, the interest on the account, and the balance of funds, representing that as of December 14, 2016, R.W. had $627,652.71 on account with AMIG and **James Nix** and **Bradley Nix**. This was a false statement, because as of December 18, 2016, prior to deposits from R.W. which totaled $572,000, the outstanding balance on the AMIG, LLC Chase Bank account number XXXXXX6886 was approximately $34,727.84

38.    All told, R.W. invested approximately $621,000 with **Bradley Nix** and **James Nix**, and lost a total of approximately $450,000.

All in violation of 18 U.S.C. § 1349.

15

## COUNTS 2 - 6

Violation: 18 U.S.C. § 1343
(Wire Fraud)

1.    The General Allegations section of this indictment and paragraphs 1-38 of

Count 1 of this indictment are realleged and incorporated by reference as though fully set

forth herein, as constituting and describing the defendants' knowing scheme and artifice to

defraud victims and unlawfully obtain money from such victims by means of false and

fraudulent pretenses, representations, and promises.

### Acts in Execution of the Scheme

2.    On or about the date set forth below, in the Eastern District of Texas and

elsewhere, for the purpose of executing and attempting to execute the above-described

knowing scheme and artifice to defraud victims and unlawfully obtain money and property

from victims by means of false and fraudulent pretenses, representations, and promises, the

defendants, **James Nix** and **Bradley Nix**, acting in concert with and aided and abetted by

each other, knowingly transmitted and caused to be transmitted by means of wire

communications in interstate and foreign commerce the writings, signs, signals, pictures,

and sounds described below, and acted with a specific intent to defraud:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 2 | January 2, 2016 | Interstate transmission of a facsimile from telephone fax number 972-436-4209, in the Eastern District of Texas, to Provident Trust Group, telephone fax number 702-253-7565 located in Las Vegas, Nevada |

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 3 | January 4, 2016 | Wire Transfer in the amount of $399,250 from Provident Trust Group Citizen's Business Bank account number XXXXXX2306 located in Ontario, California, to AMIG, LLC's, Chase Bank, N.A. account number XXXXXX6886, located in Texas |
| 4 | August 28, 2017 | Wire Transfer in the amount of $100,000 from Provident Trust Group Citizen's Business Bank account number XXXXXX2306, located in Ontario, California, to AMIG, LLC's Chase Bank, N.A. account number XXXXXX6886, located in Texas. |
| 5 | March 12, 2019 | Wire Transfer in the amount of $74,000 from Provident Trust Group's Citizen's Business Bank account number XXXXXX2306, located in Ontario, California, to AMIG, LLC's Chase Bank, N.A account number XXXXXX6886, located in Texas |
| 6 | December 14, 2016 | Wire transmission of funds in the amount of $350,000 from W.T.S.'s bank account at Chase Bank to AMIG, LLC's Chase Bank account number XXXXXX6886. |

All in violation of 18 U.S.C. § 1343.

## COUNTS 7 - 8

> Violation: 18 U.S.C. §§ 1957 and 2
> (Money Laundering and Aiding and
> Abetting)

1.      The General Allegations section of this indictment is realleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates set forth below, in the Eastern District of Texas, and elsewhere, the defendant, **James Nix**, aided and abetted by others, both known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transactions, by, through, and to a financial institutions, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000.00, that is, the withdrawal, deposit, exchange, and transfer of funds, such property having been derived from a specified unlawful activity, that is wire fraud, a violation of 18 U.S.C. § 1343, as alleged in Count Six of the Indictment:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF MONETARY TRANSACTION | AMOUNT OF TRANSACTION (APPROXIMATE) |
|---|---|---|---|
| 7 | December 22, 2016 | Remittance of cashier's check, the cashier's check being made payable to Land Rover Darien, drawn from AMIG, LLC, Chase Bank, N.A. XXXXXX6886 for the purchase of a 2016 Land Rover Discovery bearing VIN SALAK2V63GA837443 | $69,256.39 |

18

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF MONETARY TRANSACTION | AMOUNT OF TRANSACTION (APPROXIMATE) |
|---|---|---|---|
| 8 | January 26, 2017 | Remittance of cashier's check, the cashier's check being made payable to Miller Motor Cars, drawn from AMIG, LLC, Chase Bank, N.A. XXXXXX6886 for the purchase of a 2017 Maserati Levante bearing vehicle identification number (VIN) ZN661XUL8HX231458 | $81,503.13 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## COUNT 9

Violation: 18 U.S.C. §§ 1957 and 2
(Money Laundering and Aiding and
Abetting)

1.   The General Allegations section of this indictment is realleged and incorporated by reference as though fully set forth herein.

2.   On or about the dates set forth below, in the Eastern District of Texas, and elsewhere, the defendant, **Bradley Nix**, aided and abetted by others, both known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transaction, by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally-derived property of a value greater than $10,000.00, that is, the withdrawal, deposit, exchange, and transfer of funds, such property having been derived from a specified unlawful activity, that is wire fraud, a violation of 18 U.S.C. § 1343, as set forth in Count 5 of the Indictment:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF MONETARY TRANSACTION | AMOUNT OF TRANSACTION (APPROXIMATE) |
|---|---|---|---|
| 9 | March 19, 2019 | Writing and delivery of check signed by Bradley Nix, made payable to individual known to the Grand Jury as "J.B.," drawn from AMIG, LLC, Chase Bank, N.A. XXXXXX6886 | $25,000 |

All in violation of 18 U.S.C. §§ 1957 and 2.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

### Pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 982(a)(1) and 28 U.S.C. § 2461

1.     The allegations contained in Counts 1 through 9 of this indictment are realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants have an interest.

2.     Upon conviction of any violation of 18 U.S.C. § 1343 or 18 U.S.C. § 1349, the defendants, **James Nix** and **Bradley Nix**, shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to the offense(s), pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The property which is subject to forfeiture, includes but is not limited to, the following:

> a.  One (1) 2017 Maserati Levante bearing vehicle identification number (VIN) ZN661XUL8HX231458;
>
> b.  One (1) 2016 Land Rover Discovery bearing VIN SALAK2V63GA837443;
>
> c.  A sum of money in United States currency, and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are personally liable, including a money judgment.

3.     Upon conviction of any violation of 18 U.S.C. § 1957, the defendants, **James Nix** and **Bradley Nix**, shall forfeit to the United States any property, real or personal,

involved in such offense, or any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1), including a money judgment representing funds involved in the offense.

    4.    Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendants:

    a.  Cannot be located upon the exercise of due diligence;

    b.  Has been transferred, or sold to, or deposited with a third party;

    c.  Has been placed beyond the jurisdiction of the Court;

    d.  Has been substantially diminished in value; or

    e.  Has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of **James Nix** or **Bradley Nix,** pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

    5.    By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C), 18 U.S.C. § 982(a)(1), and 28 U.S.C. § 2461(c) and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____MICE_____                          _____11/18/20_____

GRAND JURY FOREPERSON                     Date

STEPHEN J. COX
UNITED STATES ATTORNEY

_____                      ___November 18, 2020___

BY:  THOMAS E. GIBSON                       Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| V. | § | Case No. 4:20-CR- *355 -ALM/CAN* |
| | § | Judge _____ |
| BRADLEY PAUL NIX (01) | § | |
| JAMES CLARK NIX (02) | § | |

## NOTICE OF PENALTY

### COUNTS 1-6

Violation:      18 U.S.C. §§ 1349, 1343 (Wire Fraud and Conspiracy to Commit Wire Fraud)

Penalty:      Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant—then a fine not more than the greater of twice the gross gain to the defendant or twice the gross loss to individual(s) other than the defendant; or both such imprisonment and fine. A term of supervised release of not more than three years in addition to such term of imprisonment.

If the violation affected a financial institution, then: Imprisonment for a term not more than 30 years, a fine not to exceed $1,000,000.00, or if any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant—then a fine not more than the greater of twice the gross gain to the defendant or twice the gross loss to individual(s) other than the defendant; or both such imprisonment and fine. A term of supervised release of not more than five years in addition to such term of imprisonment.

Special
Assessment:      $100.00 each count

### COUNTS 7-9

Violation:      18 U.S.C. §§ 1957 and 2 (Money Laundering and Aiding and

24

Abetting)

Penalty:    Imprisonment for a term not more than ten years, a fine not to
            exceed $250,000, or if any person derives pecuniary gain from the
            offense, or if the offense results in pecuniary loss to a person
            other than the defendant—then a fine not more than the greater of
            twice the gross gain to the defendant or twice the gross loss to
            individual(s) other than the defendant; or both such imprisonment
            and fine. A term of supervised release of not more than three
            years in addition to such term of imprisonment.

Special
Assessment:   $100.00 each count

AO 442 (Rev. 11/11)  Arrest Warrant

US MARSHALS SERVICE
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION
DOCUMENTS RECEIVED
4:57 pm  Nov 19, 2020

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Texas

| | | | |
|---|---|---|---|
| United States of America | ) | | |
| v. | ) | Case No. | 4:20-cr-00355-ALM-CAN |
| James Clark Nix (2) | ) | | |
| | ) | | |
| *Defendant* | ) | | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*     James Clark Nix                                                                                           ,
who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint
☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud
18 U.S.C. § 1343 - Wire Fraud
18 U.S.C. §§ 1957 and 2 - Money Laundering and Aiding and Abetting

Date:      11/19/2020

*Issuing officer's signature*

City and state:     Sherman, TX

David A. O'Toole, Clerk
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____. |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |